# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MARILYN MUELLER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALLTRAN FINANCIAL LP, <br><br> Defendant. | Case No.: 20-cv-395 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Marilyn Mueller is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a personal credit card account.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendant sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant Alltran Financial, LP, ("Alltran") is a foreign limited partnership with its primary offices located at 5800 North Course Drive, Houston, Texas 77072.

7. Alltran is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Alltran is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Alltran is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

**FACTS**

10. On or about April 16, 2019, Chase Bank, N.A. ("Chase") mailed an account statement to Plaintiff. A copy of this account statement is attached to this complaint as Exhibit A.

11. Upon information and belief, the debt referenced in Exhibit A was incurred by use of a credit card, which was used only for personal, family, and household purposes.

12. Exhibit A includes the following representations:

|  | May 2019 |  |  |  |  |  | New Balance |
|---|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S | **$5,183.34** |
| 28 | 29 | 30 | 1 | 2 | 3 | 4 | Minimum Payment Due |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 | **$1,084.00** |
| 12 | **13** | 14 | 15 | 16 | 17 | 18 | Payment Due Date |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 | **05/13/19** |
| 26 | 27 | 28 | 29 | 30 | 31 | 1 | |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 | |

2

13. <u>Exhibit A</u> additionally includes the following representations:

```
███████████20320010840000518334000000006

    The Past Due        Payment Due Date:            05/13/19
 amount of $965.00 is   New Balance:                 $5,183.34
     included in your   Minimum Payment:             $1,084.00
     Minimum Payment.
                        Account number:  ███████ 2032
```

14. <u>Exhibit A</u> thus states that, as of April 16, 2019, Plaintiff's alleged debt had a "New Balance" of $5,183.34, a "Past Due Amount" of $$965.00, a "Payment Due Date" of May 13, 2019, and a "Minimum Payment Due" of $1,084.00.

15. Upon information and belief, the acceleration clause in the underlying credit agreement governing the alleged debt referenced in <u>Exhibit A</u> provided for *optional* acceleration upon the consumer's default.

16. Upon information and belief, the acceleration clause in the underlying credit agreement governing the alleged debt referenced in <u>Exhibit A</u> provided: "If your account is in default, we **may** close it without notice and require you to pay your unpaid balance immediately." (emphasis added).

17. <u>Exhibit A</u> also contains an "ACCOUNT MESSAGE" that the "account is closed and no longer available for use."

18. <u>Exhibit A</u> states that the creditor has closed the account but does not state that the consumer must pay the unpaid balance immediately. Instead, <u>Exhibit A</u> states that the consumer can avoid acceleration and return the account to a current status by tendering the minimum payment amount on or before May 13, 2019, the payment due date.

19. <u>Exhibit A</u> states that Chase would not exercise its rights under the optional acceleration clause until, at the earliest, May 13, 2019.

3

20. On or about May 6, 2019 Alltran mailed Plaintiff a debt collection letter regarding the same alleged debt owed to Chase. A copy of this letter is attached to this complaint as Exhibit B.

21. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

22. Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by Alltran to attempt to collect alleged debts.

23. Upon information and belief, Exhibit B was the first letter that Alltran mailed to Plaintiff with respect to the alleged debt referenced in Exhibit B.

24. Exhibit B includes the following representations which largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that the debt collector send the consumer along with, or within five days of, their initial communications:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within the thirty day period that the debt, or any portion thereof, is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days from receiving this notice, this office will provide you the name and address of the original creditor, if different from the current creditor.

25. Exhibit B also includes the following representations:

> Creditor: Chase Bank USA, N.A.
> Account: XXXXXXXXXXXX2032
> Alltran ID: ▮▮▮▮4352
> Account Balance: $5,183.34
> Partial Account Number for Your Security

26. Additionally, Exhibit B states:

**YOUR ACCOUNT IS PAST DUE**

4

27. Exhibit B further states:

> Please remit payment in full of any undisputed amount of the past due amount, payable to Alltran Financial, LP, in the enclosed envelope.

28. Lastly, Exhibit B states:

> We want to help you resolve this account. If you wish to discuss your account, please call RACHELLE BELL at 888-732-7013, ext 3526, so we may assist you.

29. Exhibit B, mailed on May 6, 2019 --- a week before the "Payment Due Date" stated in Exhibit A --- states the "ACCOUNT IS PAST DUE" and that the "Account Balance" is $5,183.34, and seeks "payment in full of any undisputed amount."

30. Exhibit B makes no reference whatsoever to any minimum payment amount that Plaintiff could pay to return the account to a current status.

31. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

32. The representation in Exhibit B that, as of May 6, 2019, Plaintiff's account had a "PAST DUE" amount of $5,183.34 is deceptive, misleading, and unconscionable. *See* FTC Staff Commentary, 53 Fed. Reg. 50097, 50106 ("A debt collector may not ... falsely assert that the debt has matured or that it is immediately due and payable, when it is not.").

33. According to Exhibit A, on May 6, 2019, when Alltran mailed Exhibit B, Plaintiff's account had a "Past Due Amount" of $965.00, a "Minimum Payment Due" of $1,084.00, and a "Payment Due Date" of May 13, 2019. Exhibit A.

34. By mailing the April 16, 2019 account statement, Chase waived its right to accelerate the maturity of the account before May 13, 2019, and as of the March 6, 2018, when Alltran mailed its letter, Chase had not exercised the optional acceleration clause, notwithstanding whether Chase had closed or charged off the account for accounting purposes.

*See, e.g., Johnson v. LVNV Funding*, No. 13-cv-1191, 2016 U.S. Dist. LEXIS 19651, at *15 (E.D. Wis. Feb. 18, 2016) ("That WaMu chose to write off the debt does not mean that it could improperly accelerate it."); *see also, Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1160-61 (Ind. Ct. App. 2010) (in the context of credit card accounts, "a 'charge off' appears to be an accounting device that has no bearing upon the question of whether an optional acceleration clause has been invoked.").

35. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that, as of May 6, 2019, the account is "PAST DUE" with an "Account Balance" of $5,183.34 and without any reference to a minimum payment, while Exhibit A states that only the minimum payment ($1,084.00) is due, and that only a portion of the minimum payment ($965.00) is past due. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'"); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector misleads consumer by stating a "current balance" without disclosing that a portion of that balance "might not yet be due, let alone overdue."); *Barnes v. Advanced Call Ctr. Techs, LLC*, 493 F.3d 838, 840 (7th Cir. 2007) ("only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)"); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("What [the debt collector] certainly could do was to state the total amount **due** --- interest and other charges as well as principal --- on the date the dunning letter was sent. We think the statute required this.").

36. An unsophisticated consumer, upon receiving Exhibit B, would understand that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

37. The representation in Exhibit B that Plaintiff's alleged debt had been accelerated is false, deceptive, misleading, and unconscionable and is a misrepresentation of the legal status of the debt.

38. Plaintiff was confused by Exhibits A & B.

39. The unsophisticated consumer would be confused by Exhibits A & B.

40. Plaintiff had to spend time and money investigating Exhibits A & B.

### *The FDCPA*

41. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed

7

the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this

8

reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

42. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

43. Misrepresentations of the character, amount or legal status of any debt, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*,

9

2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

44. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

46. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

48. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

49. 15 U.S.C. § 1692g provides, in relevant part:

>  (a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt

50. The debt collector must state the amount of the debt in a non-confusing manner. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016) (citing *Chuway*,

10

Case 2:20-cv-00395-LA   Filed 03/12/20   Page 10 of 16   Document 1

362 F.3d at 947); *see also, Ozier v. Rev-1 Sols., LLC*, No. 17-cv-118, 2017 U.S. Dist. LEXIS 126017, at *6 (E.D. Wis. Aug. 9, 2017) ("The FDCPA requires a debt collector to accurately, and without deceptive language, state the amount of the debt owed.") (citing 15 U.S.C. § 1692e).

### *The WCA*

51. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

52. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

53. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

54. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

55. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

11

56. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

57. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

58. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

59. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

60. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

61. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

62. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

63. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

64. Prior to sending Exhibit B, Alltran knew or should have known Chase had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $1,084.00, and a "Payment Due Date" of May 13, 2019.

65. Prior to sending Exhibit B, Alltran knew or should have known that Chase had not accelerated Plaintiff's account balance on the date Alltran mailed Exhibit B to Plaintiff.

66. Alltran represented to Plaintiff that Plaintiff's Chase account had been accelerated by seeking to collect the entire balance and not just the amount actually due or the amount past due.

67. Alltran thus misrepresented the amount, character, and legal status of the debt it was collecting.

68. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Prior to sending Exhibit B, Alltran knew or should have known Chase had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $1,084.00, and a "Payment Due Date" of May 13, 2019.

71. Prior to sending Exhibit B, Alltran knew or should have known that Chase had not accelerated Plaintiff's account balance on the date Alltran mailed Exhibit B to Plaintiff.

72. Alltran represented to Plaintiff that Plaintiff's Chase account had been accelerated by seeking to collect the entire balance and not just the amount actually due or the amount past due.

73. Alltran misrepresented the amount, character, and legal status of the debt by claiming a right to immediate payment of an amount greater than the amount due under the law.

74. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

75. Plaintiff brings this action on behalf of two Classes.

76. Class I ("Nationwide Class") consists of: (a) all natural persons in the United States of America (b) who were sent an account statement by Chase in the form of Exhibit A, (c) and subsequently were sent a letter in the form of Exhibit B, (d) where the letter in the form of Exhibit B was mailed prior to the "Minimum Payment Due Date" stated in the account statement in the form of Exhibit A, (e) and the alleged debt was incurred for personal, family or household purposes, (f) and the letter in the form of Exhibit B was mailed between March 12, 2019 and March 12, 2020, (f) and was not returned by the postal service.

77. Class II ("Wisconsin Class") is a subclass of Class I, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent an account statement by Chase in the form

14

of Exhibit A, (c) and subsequently were sent a letter in the form of Exhibit B, (d) where the letter in the form of Exhibit B was mailed prior to the "Minimum Payment Due Date" stated in the account statement in the form of Exhibit A, (e) and the alleged debt was incurred for personal, family or household purposes, (f) and the letter in the form of Exhibit B was mailed between March 12, 2019 and March 12, 2020, (f) and was not returned by the postal service.

78. Each class is so numerous that joinder is impracticable.

79. Upon information and belief, there are more than 50 members of each class.

80. There are questions of law and fact common to the each members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and/or the WCA.

81. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

82. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

83. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

84. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: March 12, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge\_
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com